1
2
3
4
5
6

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

7
8
9
10
11

| | |
|---|---|
| **United States of America,**<br>Plaintiff/Respondent<br>-vs-<br>**Philip James Chillemi,**<br>Defendant/Movant | CR-03-0917-PHX-PGR<br>CV-07-0430-PHX-PGR (JI)<br><br>**REPORT & RECOMMENDATION**<br>**On Motion to Vacate, Set Aside, or**<br>**Correct Sentence Pursuant to**<br>**28 U.S.C. § 2255** |

12

## I. MATTER UNDER CONSIDERATION

13
14
15
16

Movant, following his conviction in the United States District Court for the District of Arizona, filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on February 26, 2007 (#82).  On April 20, 2007 Respondent filed its Response (#88). Movant filed a Reply on May 7, 2007 (#90).

17
18
19
20

The Movant's Motion is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases , Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

21
22
23

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A. PROCEEDINGS AT TRIAL

24
25
26
27
28

On September 2, 2003, Movant was indicted (#2) on charges of Bank Robbery, in violation of 18 U.S.C. § 2113(a), based upon allegations that on July 7, 2003 he had used force, violence, or intimidation to take funds belonging to Bank of America in Phoenix, Arizona.  Movant was arrested in the Southern District of Ohio, and was ultimately transported to and appeared in the District of Arizona on September 29, 2003. (Commitment,

1  #3; M.E. 9/29/03, #4.)  Attorney Darious Nickerson was appointed to represent Movant, and

2  Movant was ordered detained.  (M.E. 9/29/03, #4; M.E. 10/3/03, #7; Order 10/23/03, #9.)

3          The matter proceeded to trial on December 2, 2003, and on December 11, 2003, the

4  jury convicted Movant of the sole charge of the Indictment.  (M.E. 12/11/03, #32.)  On June

5  28, 2004, Movant appeared for sentencing.  Counsel moved for a continuance to permit

6  Movant to retain private counsel.  The motion was denied.  (R.T. 6/28/04, #74 at 6-7.)

7  Disparities then arose between the statements of trial counsel and Movant as to whether

8  Movant had had opportunity to review the presentence report.  A recess was taken to allow

9  Movant to review the report with counsel.  (*Id.* at 8-10.)  Counsel then again moved for a

10 continuance, citing Movant's inability to read the report due to the lack of his reading

11 glasses, as well as his desire to have a psychological evaluation done and to retain new

12 counsel for sentencing due to communication difficulties with trial counsel.  (*Id.* at 10-12.)

13 A continuance was granted to allow trial counsel to review the report with Movant.. (*Id.* at

14 12-14.)

15          On July 7, 2004, Movant appeared again for sentencing.  A further continuance was

16 granted to allow briefing.  (R.T. 7/7/04, # 75.)

17          Finally, on August 16, 2004, the matter proceeded to sentencing.  Trial counsel

18 immediately moved for a continuance to permit Movant to retain private counsel.  The Court

19 denied the motion on discovering that the attorney who had purportedly agreed to represent

20 Movant had not yet been retained, had little information about the issues, and did not have

21 adequate information to assure the Court of when he would be prepared to proceed to

22 sentencing.  (R.T. 8/16/04, #71 at 1-15.)  Movant moved to proceed *pro se*, and asserted that

23 he had obtained a GED, and had a two-year degree in paralegal studies.  The motion was

24 denied.  (*Id.* at 7-9.)  Movant again asserted that he had not had adequate opportunity to

25 review the presentence report with trial counsel. (*Id.* at 10-22.)

26          Movant was sentenced to a term of 240 months in prison.  (M.E. 8/16/04, #58;

27 Judgment, #59.)

28

**B.  PROCEEDINGS ON DIRECT APPEAL**

Movant filed a Notice of Appeal (#60).  New counsel was appointed. (Order 9/10/04, #62.)  His appeal was consolidated with the appeal from a revocation of supervised release in District of Arizona Case CR-97-0199-PHX-PGR.    Movant argued four grounds for appeal: (1) failure of the government to prove intimidation; (2) evidentiary error in admission of opinion testimony of a lay witness; (3) error in denial of Movant's request to represent himself; and (4) a right to resentencing under *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005).  By a Memorandum Decision filed March 14, 2006, the Ninth Circuit Court of Appeals denied Movant's appeal, and affirmed the judgment of this Court.  (Memorandum Decision, #80.)

**C.  PRESENT MOTION TO VACATE**

Movant commenced the present proceeding by filing his Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255  on February 26, 2007 (#82).  Movant asserts three grounds for relief:

(1)     denial of effective assistance of counsel because his attorney failed to conduct an adequate pretrial investigation and failed to raise the issue of Movant's competence to stand trial;

(2)     denial of effective assistance of counsel through the cumulative errors of counsel throughout the trial;

(3)     Movant's conviction was outside the scope of Title 18 because Title 18 was "never enacted into positive law" and so there is "a question of the constitutionality of the conviction and also the jurisdiction of the conviction."

On April 20, 2007 Respondent filed its Response (#88).   Respondent argues that:

(a)     Movant fails to support his claim of inadequate investigation and cumulative errors with specific allegations;

(b)     Movant's claim of incompetence to stand trial is contradicted by the record;

(c)     Title 18 was codified and enacted into positive law in Section 1, of the Act of

June 25, 1948, c. 645, 62 Stat. 683.

Movant filed a Reply on May 7, 2007 (#90), arguing that his competence could only be determined by a professional mental health examination.  As for his third ground for relief, Movant argues that Public Law 80-772 was originally introduced in the 79th Congress as House Bill 2200, but died when Congress adjourned *sine die*. The substance of House Bill 2200 was resurrected in the 80th Congress as House bill 3190, which was passed by the House but was not passed by the Senate before a *sine die* adjournment of the 80th Congress' First Session on July 27, 1947.  During the Second Session of the 80th Congress, the Senate improperly resurrected House Bill 3190, and proposed amendments which it returned to the House.  The Second Session then adjourned *sine die* on June 20, 1948, without a vote by the House or signing of the bill.  The House Speaker and President of the Senate then signed the bill on June 23, 1948, and President Truman signed it into law on June 25, 1948.

## III. APPLICATION OF LAW TO FACTS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL (Grounds One and Two)

In his Grounds One and Two, Movant asserts that he received ineffective assistance of counsel, as a result of trial counsel's: (1) inadequate pretrial investigation; (2) failure to challenge Movant's competence to stand trial; and (3) cumulative errors at trial.  Respondent argues that Movant fails to adequately support any of these claims.

### 1.  Standard for Ineffective Assistance Claims

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, a defendant must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88, 694.  Although Movant must prove both elements, the Court may reject his claim upon finding either that counsel's performance was reasonable

1   or that the claimed error was not prejudicial.  *Id.* at 697.

2       A deficient performance is one in which counsel's errors were so great he or she was

3   not functioning as the counsel guaranteed by the Sixth Amendment.  *Iaea v. Sunn,* 800 F.2d

4   861, 864 (9th Cir. 1986).  An objective standard applies to proving such ineffectiveness, and

5   requires a petitioner to demonstrate that counsel's actions were "outside the wide range of

6   professionally competent assistance, and that the deficient performance prejudiced the

7   defense."  *United States v. Houtcens,* 926 F.2d 824, 828 (9th Cir. 1991)(quoting *Strickland,*

8   466 U.S. at 687-90).    The reasonableness of counsel's actions is judged from counsel's

9   perspective at the time of the alleged error in light of all the circumstances.  *Kimmelman v.*

10  *Morrison,* 477 U.S. 365, 381 (1986); *Strickland,* 466 U.S. at 689.

11      Moreover, there is a strong presumption counsel's conduct fell within the wide range

12  of reasonable professional assistance and that, under the circumstances, the challenged action

13  might be considered sound trial strategy.  *United States v. Quintero-Barraza,* 78 F.3d 1344,

14  1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996). The court must "presume that the

15  attorneys made reasonable judgments and decline to second guess strategic choices." *United*

16  *States v. Pregler,* 233 F.3d 1005, 1009 (7th Cir. 2000).

17      In light of that presumption, cursory allegations that are purely speculative cannot

18  support a claim of ineffective assistance of counsel. "Conclusory allegations [of ineffective

19  assistance of counsel] which are not supported by a statement of specific facts do not warrant

20  habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir.1994).  *See also Stein v. U.S.,*  390

21  F.2d 625, 627 (9th Cir. 1968) ("[i]t is well-established that mere conclusory allegations are

22  not sufficient to warrant relief under a § 2255 motion").

23      Thus, for example, a defendant cannot satisfy the *Strickland* standard by "vague and

24  conclusory allegations that some unspecified and speculative testimony might have

25  established his defense." *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 298 (3d Cir.), *cert. denied,*

26  502 U.S. 902 (1991).   A defendant may not simply speculate about what a witness'

27  testimony, but must adduce evidence to show what it would have been.  *Grisby v. Blodgett*,

28  130 F.3d 365, 373 (9th Cir. 1997).  "[E]vidence about the testimony of a putative witness

1   must generally be presented in the form of actual testimony by the witness or on affidavit.

2   A defendant cannot simply state that the testimony would have been favorable; self-serving

3   speculation will not sustain an ineffective assistance claim."   *U.S. v. Ashimi*, 932 F.2d 643,

4   650 (7th Cir. 1991).

5        Moreover, Movant may not await an evidentiary hearing to produce the details of his

6   claim. "Mere conclusory allegations do not warrant an evidentiary hearing." *Shah v. United*

7   *States,* 878 F.2d 1156, 1161 (9th Cir.), *cert. denied,* 493 U.S. 869 (1989).

8

9   **2.  Inadequate Pretrial Investigation**

10       Movant asserts that counsel failed "to conduct an adequate pretrial investigation."

11  (Motion, #82 at 5.)   However, as noted by Respondents, Movant fails to proffer any

12  indication what additional investigation counsel should have undertaken.   Neither does

13  Movant proffer what admissible evidence that investigation would have yielded, nor how it

14  would have altered the outcome of the trial.   Movant' conclusory allegations fail to sustain

15  his burden of establishing deficient performance and prejudice.   Accordingly, this claim is

16  without merit.

17

18  **3.  Movant's Competence to Stand Trial**

19       Next, Movant alleges that counsel failed "to raise the issue of defendant['s]

20  competence to stand trial at defendant['s] request."

21       <u>Failure to Comply with Movant's Request</u> - Movant argues that he had requested that

22  a competency claim be made by trial counsel, but counsel refused.

23           A defendant is not entitled to an attorney who agrees with the
         defendant's personal view of the prevailing law or the equities of the
24       prosecutor's case. A defendant is entitled to an attorney who will
         consider the defendant's views and seek to accommodate all reasonable
25       requests with respect to trial preparation and trial tactics. A defendant
         is entitled to appointment of an attorney with whom he can
26       communicate reasonably, but has no right to an attorney who will
         docilely do as he is told.

27  *McQueen v. Blackburn,* 755 F.2d 1174, 1178 (5th Cir. 1985), *cert. denied*, 474 U.S. 852.

28

Moreover, tactical decisions with which a defendant disagrees cannot form the basis for a claim of ineffective assistance of counsel. *Morris v. California*, 966 F.2d at 456. "Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation." *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980). Rather, Movant must establish that failure to pursue the tactic was "outside the wide range of professionally competent assistance." *Houtcens,* 926 F.2d at 828.

Failure to Discern or Pursue Claim **-** Movant asserts that his competence could only be established by a professional evaluation, which trial counsel failed to obtain. (Reply, #90 at 1.) However, Movant offers nothing to show that he was incompetent to stand trial, or that reasonable counsel would have divined the need to pursue the issue. The only reference in the record to any impairment of Movant's mental capacity was in the presentence report, which reflected evaluations as a juvenile that found Movant to be "depressed, emotionally unstable, and lacking self-regulation" or as having a "borderline personality with sociopathic traits" and reflected a history of drug abuse. (Exhibit 4, Presentence Report at 3-4.) There is nothing to suggest that these conditions were symptomatic at the time of trial, or that they were significant enough to impair Movant's ability to comprehend the proceedings and participate in his defense.

Doubtless, Movant was not a docile client, attempting to fire his counsel in the midst of the proceedings. But many defendants are not docile clients, sometimes out of ignorance, sometimes out of fear or frustration, sometimes out of an effort to rig the system, and sometimes out of mental defect. Movant offers nothing to show that counsel should have divined the latter. The test for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960) (*per curiam*) (internal quotation marks omitted). "Not all people who have a mental problem are rendered by it legally incompetent." *Bouchillon v. Collins*, 907 F.2d 589, 593 (5th Cir. 1990). In a footnote, the *Bouchillon* court noted: "We venture to guess that if every accused were to be

adjudged incompetent who was rendered depressed or apathetic at finding himself incarcerated and indicted on felony charges, few would ever be tried." *Id.* at 594, note 17. Rather than attempting to assess mental health, "[r]equiring that a criminal defendant be competent has a modest aim:  It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel."   *Godinez v. Moran*, 509 U.S. 389, 402 (1993). "[C]ompetency to stand trial . . . does not require mastery of technical legal knowledge." *Hoffman v. Arave,* 455 F.3d 926, 938 (9th Cir. 2006).

As noted by Respondents, Movant displayed significant ability to understand  the proceedings. His discussions with the Court at sentencing reflected someone well in grasp of the proceedings, although perhaps appearing manipulative.  For example:

> PHILLIP JAMES CHILLEMI: My position I stated earlier, sir, that I have not reviewed the presentence investigation thoroughly or - - and I was in the process of doing so.  And I also would like to invoke my Sixth Amendment right to represent myself as my own counsel.
> I am not satisfied with my attorney. I have made that clear to the Court two or three times and I want to represent myself.  That is my constitutional right to represent myself sir.
> THE COURT: And you're prepared to go forward with the sentencing here this morning?
> PHILLIP JAMES CHILLEMI: Well, sir, I have not seen the motions the Government has filed concerning *Blakely*.  I have not seen any response of the Government.  I have not even filed a response to the Government's motions concerning *Blakely* and that is the issue I want to clearly address to the Court as you stipulated to Mr. Nickerson.
> So I can't really say that I would be prepared at this moment in time to argue my position.

(R.T. 8/16/04, #71 at 19-20.)

Movant has failed to offer anything to establish that counsel was ineffective for failing to pursue a claim of incompetence to stand trial.

**4.  Cumulative Errors**

Finally, Movant asserts that trial counsel's assistance was ineffective because of "the cumulative errors of trial counsel throughout the entire trial."  Again, Movant simply makes a conclusory claim, and offers no explanation of the nature of the complained of errors.  This is not adequate to justify relief, *James*, 24 F.3d at 26, or even an evidentiary hearing, *Shah,*

1   878 F.2d at 1161, on this claim.

2

3   **5.  Summary re Ineffective Assistance**

4        Movant fails to support his claims of ineffective assistance of counsel.  Accordingly,

5   the undersigned finds that Grounds One and Two of the Motion to Vacate are without merit,

6   and must be denied.

7

8   **B.  PASSAGE OF CRIMINAL STATUTE (Ground Three)**

9        For his third ground for relief, Movant asserts that the whole of the federal criminal

10  code has not been properly enacted into law, and thus his entire prosecution was without

11  legal authority.  Movant raises four arguments in support of this claim: (1) that the *sine die*

12  adjournment of the First Session of the 80th Congress on July 27, 1947 precluded the Senate

13  from passing H.R. 3190 during the Second Session of the 80th Congress; (2) that the House

14  adjourned *sine die* on June 20, 1948 without voting on the Senate's amendments to the bill;

15  (3) that the House Speaker and President of the Senate could not sign the bill after the June

16  20th adjournment; and (4) that the President could not sign the bill into law after the June 20th

17  adjournment.[1]   Respondents simply argue that "the legislative history of Title 18 shows

18  clearly it was enacted into positive law."  (#88 at 6.)

19

20  **1.  Propriety of Challenge to Enactment of Legislation**

21        Whatever the merits or lack thereof in Movant's historical arguments, this Court is not

22  free to consider a challenge to the validity of enactment of Title 18 based upon purported

23  defects in the political process..

24              The signing by the Speaker of the House of Representatives, and by the

25  _____

26        [1]  Movant argues that the codification of Title 18 was originally introduced in the 79th
    Congress as H.R. 2200, died when Congress adjourned and was resurrected in the 80th

27  Congress as H.R. 3190.  The undersigned does ***not*** understand Movant to be arguing that this
    reintroduction in the 80th Congress was improper, a proposition that would preclude Congress

28  from ever reconsidering a matter once introduced.

President of the Senate, in open session, of an enrolled bill, is an official attestation by the two houses of such bill as one that has passed congress. It is a declaration by the two houses, through their presiding officers, to the President, that a bill, thus attested, has received, in due form, the sanction of the legislative branch of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass Congress shall be presented to him. And when a bill, thus attested, receives his approval, and is deposited in the public archives, its authentication as a bill that has passed Congress should be deemed complete and unimpeachable. As the President has no authority to approve a bill not passed by Congress, an enrolled act in the custody of the Secretary of State, and having the official attestations of the Speaker of the House of Representatives, of the President of the Senate, and of the president of the United States, carries on its face a solemn assurance by the legislative and executive departments of the government, charged, respectively, with the duty of enacting and executing the laws, that it was passed by Congress. The respect due to coequal and independent departments requires the judicial department to act upon that assurance, and to accept, as having passed Congress, all bills authenticated in the manner stated; leaving the courts to determine, when the question properly arises, whether the act so authenticated, is in conformity with the Constitution.

*Marshall Field & Co. v. Clark,* 143 U.S. 649, 672 (1892).  Movant concedes that H.R. 3190 was in fact signed by the Speaker of the House and the President of the Senate, and by the President of the United States.  Accordingly, the validity of the enactment of Title 18 is a political question, and it is not for this Court to look back into the legislative process and declare that something was amiss.

However, even if this Court's consideration of the matter were not barred by the *Marshall Field* doctrine, Movant's claims are without merit.

**2.  Effect of Adjournment of First Legislative Session**

Movant argues that the adjournment between the first and second sessions of the 80th Congress worked a death to H.R. 3190.[2]  While unenacted bills may evaporate between

---

[2] Movant refers to the July 27, 1947 adjournment as an adjournment *sine die*, which is an adjournment "without setting a time for another meeting or session."  Black's Law Dictionary (5th Ed. 1979).  The First Session of the 80th Congress adjourned *sine die* on December 19, 1947. House Journal 80th Congress 1st Session at 855 (December 19, 1947). The adjournment on July, 1947 was not *sine die*, but was specifically until January 2, 1948, the day before the start of the Second Session of the 80th Congress.  House Journal 80th Congress 1st Session at 746 (July 26, 1947).  In any event, as discussed hereinafter, an

Congresses, the same is not true of bills that remain unenacted over the intersession adjournments of the same Congress.  House Rule XXVI for the 80th Congress states: "All business before committees of the House at the end of one session will be resumed at the commencement of the next session of the same Congress in the same manner as if no adjournment had taken place." House Manual, containing Constitution, Jefferson's Manual and Rules of the House of Representatives for 80th Congress, H. Doc. No. 763, 79th Cong., 2d Sess., § 901, at 433 (1947).[3]  The comments to that rule relate that the rule had been explicitly extended to "House bills sent to the senate" by a joint rule, which although subsequently abrogated, established a practice "so well established that no question has ever been raised."  *Id.* at 434.  Indeed, the comments to Section XLVII of Jefferson's Manual recognize the propriety of intersession consideration by the same Congress.

> Enrolled bills pending at the close of a session have, at the next session of the same Congress, been ordered to be treated as if no adjournment had taken place.

*Id.* at Jefferson's Manual § 577.[4]

**3. Consideration of Senate Amendments**

Movant correctly notes that the Senate did not adopt H.R. 3190, but instead adopted an amended version.  That amended version was reported back, in Senate Report 1620, to the

---

intersession adjournment, even one *sine die*, does not affect the status of pending legislation.

[3]  The historical documents cited herein are on the cusp of most modern reporting services.  Accordingly, resort has been made to those resources readily available from the Lexis/Nexis Serial Service, available through the U.S. Court's Library at http://web.lexis-nexis.com/congcomp/. The House Journal for the 80th Congress is available at Serial Volume 11113 (1st Session) and Serial Volume 11204 (2nd Session).  The House Manual for the 80th Congress is available at Serial Volume 11051, the Senate Manual at Serial Volume 11128.

[4]  The Senate had an express rule to the same effect: "At the second or any subsequent session of a Congress the legislative business of the Senate which remained undetermined at the close of the next preceding session of that Congress shall be resumed and proceeded with in the same manner as if no adjournment of the Senate had taken place."  Rule XXXII of the Standing Rules of the Senate, Senate Manual, 80th Congress (1947).

House of Representatives, who received it on June 18, 1948. House Journal 80th Congress 2nd Session at 688 (June 18, 1948).   Had the House not acted on that Senate Report, the matter would never had been validly enacted.  However, on June 18, 1998, the House concurred in the Senate Amendments.

> On motion of Mr. REED of Illinois, by unanimous consent, the bill (H.R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure," together with the following amendments of the Senate thereto, was taken from the Speaker's table:
>                         * * *
> When, on motion of Mr. REED of Illinois, said Senate amendments were concurred in.
> A motion to reconsider the vote whereby said Senate amendments were concurred in was, by unanimous consent, laid on the table.
> *Ordered*, That the Clerk notify the Senate thereof.

*Id.* at 704.

Thus, on June 19, 1948, the Committee on House Administration reported H.R. 3190 as a "a truly enrolled bill." *Id.* at 776.


**4.  Timeliness of Presiding Officers' Signatures**

On June 20, 1948, the House adjourned until December 31, 1948.  House Journal 80th Congress 2nd Session at 775 (June 18, 1948) The Speaker reported that on June 22, 1948 he signed H.R. 3190.  *Id.* at 777.  The Committee then presented the bill to the President on June 23, 1948 *Id.* at 778, 780.

The Constitution does not mandate signature of bills by the presiding officers of Congress.  Rather, that requirement is made by 1 U.S.C. § 106, which requires in pertinent part:

> When such bill, or joint resolution shall have passed both Houses, it shall be printed and shall then be called the enrolled bill, or joint resolution, as the case may be, and shall be signed by the presiding officers of both Houses and sent to the President of the United States.

This statute makes no express limitation on the time during which the presiding officers may sign.  The Ninth Circuit, following the Seventh Circuit's decision in *United States v. Kapsalis,* 214 F.2d 677, 679-83 (7th Cir.1954), cert. denied, 349 U.S. 906, 75 S.Ct. 583, 99

L.Ed. 1242 (1955),  has concluded that an adjournment *sine die* does not preclude the ministerial acts necessary to completion of the legislative process.

> *Kapsalis* held that the ministerial acts of examination, enrollment, and presentment may unquestionably be delegated by Congress to its leadership, or to a standing committee, and that these delegated acts may be performed even when Congress stands adjourned *sine die*. *Kapsalis* is persuasive, and we adopt it as the law of this circuit.

*Mester Mfg. Co. v. I.N.S.,* 879 F.2d 561, 571 (9th Cir. 1989).


**5.  Timeliness of President's Signature**

Finally, Movant notes that President Truman signed the bill into law after the Congress had already adjourned.   The President, subsequent to the June 20, 1948 adjournment, advised the House that he had signed the bill on June 25, 1948. House Journal 80th Congress 2nd Session at 781-782 (June 18, 1948).  The second paragraph of section 7 of article 1 of the Constitution, reads as follows:

> 'Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; if he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it. If after such Reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law. * * * If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a Law.'

Within the ten day time limit set forth in the Constitution for the President to act on a bill, it is irrelevant to the President's approval that Congress has adjourned, and it "makes no difference whether the Congress has adjourned *sine die* or to a day named." *Edwards v. U.S.,* 286 U.S. 482, 491 (1932).  *Cf. Wright v. U.S.*, 302 U.S. 583 (1938) (discussing the converse situation, where the President is vetoing the legislation, and thus needs the house in session to return the bill for consideration of a veto override).

**6.  Effect of 1948 Act to Codify Criminal Code**

Even if there were some irregularity in the adoption of Title 18, that would not, as Movant assumes, result in the complete evisceration of the entire federal criminal system. Rather, we would be left with the pre-codification law, as subsequently amended.

> In 1948 the 80th Congress 'enacted into positive law' Title 18 of the United States Code entitled 'Crimes and Criminal Procedure' which 'revised and codified' the existing law.. . .It is well settled that such codification is not a new enactment, does not change the law and merely carries forward the same meaning as that contained in the prior law.

*Harvin v. U.S.*, 445 F.2d 675, 687-688 (C.A.D.C. 1971). In particular, the statute which Movant was convicted for violating was simply the codification of pre-existing statutes. *See e.g.* 18 U.S.C. § 2113, Historical Notes (noting section, as adopted by 1948 Act, was based on pre-existing section of the Bank and Banking Code).

**7. Summary re Challenges to Title 18**

Having conceded that the adoption of Title 18 was attested by the presiding officers of Congress and the President of the United States, Movant cannot challenge the statute on the basis that it was not properly enacted.  Moreover, Movant's assertions of impropriety are either legally insufficient or factually inaccurate.  Finally, Movant has not shown that the evisceration of Title 18 would yield his conviction void..

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed February 26, 2007 (#82) be **DENIED**.

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of*

1     *Appellate Procedure*, should not be filed until entry of the district court's judgment.

2           However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall

3 have ten (10) days from the date of service of a copy of this recommendation within which

4 to file specific written objections with the Court. *See also* Rule 10, Rules Governing Section

5 2255 Proceedings. Thereafter, the parties have ten (10) days within which to file a response

6 to the objections. Failure to timely file objections to any factual or legal determinations of

7 the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration

8 of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en*

9 *banc*).

10

11 DATED: August 31, 2007

12                                       JAY R. IRWIN
                                    United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28